**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

**No. 26-1600**

LAURIE ORTOLANO,
Plaintiff-Appellant,

v.

STEVEN BOLTON and CELIA LEONARD,
Defendants-Appellees.

## APPELLANT LAURIE ORTOLANO'S OPPOSITION TO MOTION FOR SUMMARY DISPOSITION

### I.    INTRODUCTION

Appellees ask this Court to dispose of a five-day jury trial without briefing. The Motion is filed two weeks before this appeal's scheduled mediation conference. The relief Appellees seek—summary affirmance under Local Rule 27.0(c)—is reserved for appeals in which "it shall clearly appear that no substantial question is presented." 1st Cir. Loc. R. 27.0(c). The standard is exacting, and this appeal does not meet it.

The record presents at least five substantial questions, each of which independently warrants full briefing and, taken together, supplies a compelling cumulative-error theory. The jury expressly registered confusion about the central

1

element of the claim—causation—and the district court declined to give the controlling First Circuit "set in motion" instruction that Appellant timely proposed. The court admitted inflammatory post-arrest speech evidence whose probative value the court itself implicitly acknowledged by stating it "would have entertained a limiting instruction." The court excluded evidence of Attorney Bolton's continuing animus toward Appellant while permitting Appellees to mine Appellant's own post-arrest conduct for impeachment material—an asymmetric treatment of post-incident evidence. The Rule 59 ruling credited Attorney Bolton's "powerful" Carl Drega testimony as a reasonable basis for the verdict without addressing documented record contradictions—including Attorney Bolton's own contemporaneous public statements characterizing the January 2021 incident as a politically motivated "out-and-out invasion" and Attorney Leonard's reference to "recent violent actions against government employees" made sixteen days after the January 6, 2021 Capitol breach. And the verdict-form ruling, against the backdrop of the jury's expressed confusion, prevents any post-trial test of which element of causation the jury actually resolved.

Even Appellees concede the appeal raises questions: their footnote 1 reserves an entirely separate ground for affirmance—that Appellant's subsequently-annulled guilty plea to criminal trespass bars her retaliatory-arrest claim. Whether that doctrine applies to a non-arresting government official accused of inducing the arrest

2

is an unsettled question on which the Supreme Court itself has recently granted clarification, *see Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam), and is itself a substantial question. The motion should be denied.

## II.    STANDARD GOVERNING SUMMARY DISPOSITION

First Circuit Local Rule 27.0(c) permits summary disposition only when "it shall clearly appear that no substantial question is presented." The standard is high and is deliberately limited to clear cases. Appellees rely on *Decoulos v. Town of Aquinnah*, No. 18-1820, 2019 U.S. App. LEXIS 39641 (1st Cir. 2019), but *Decoulos* was a pleading-stage dismissal in which the district court's order "clearly and adequately" resolved the legal issues. *Id.* at *1-2. This case is the opposite posture: a five-day jury trial with contested instructional, evidentiary, and Rule 59 issues. The district court itself, in declining to revisit its causation ruling, identified the controlling precedent on Rule 51 preservation as a rule that "has come under criticism in recent years." Doc. no. 259 at 18 n.16 (citing *United States v. Serrano-Delgado*, 29 F.4th 16, 25 (1st Cir. 2022) (noting concerns of Barron, Kayatta, and Lipez, JJ.)). When the trial court itself flags a precedent as ripe for reconsideration, the appeal is not the kind of one-sided matter Rule 27.0(c) contemplates.

Each appellate ground below presents at least one substantial question. Local Rule 27.0(c) does not require Appellant to demonstrate probable success on appeal

3

at this stage; she need only show that this Court's ordinary briefing process will materially aid resolution. That standard is amply met.

### III.   ARGUMENT

#### A.   The District Court's Refusal to Give the *Sanchez* "Set in Motion" Instruction, Coupled with the Jury's Express Confusion on Causation, Presents a Substantial Question

The First Circuit has held for more than three decades that the § 1983 causation element is satisfied when a defendant "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50 (1st Cir. 2009) (quoting *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989)). The doctrine exists precisely for cases like this one, in which the defendants—a Corporation Counsel and Deputy Corporation Counsel—did not personally arrest anyone but were alleged to have caused the arrest by lobbying the Chief of Police to revisit a closed file. Appellant filed a proposed instruction tracking this First Circuit formulation. *See* Doc. no. 230 at 2 ("causes an arrest if the defendant's actions set in motion events that the defendant knew or reasonably should have known would lead to the arrest").

The court instead gave a generic but-for/foreseeability instruction. See Doc. no. 232 at 10. During deliberations, the jury submitted Question #2:

4

[F]or the second claim are we looking at it trying to prove an illegal approach towards getting an arrest? Or just that they called and asked for an investigation? We need some clarity on this claim.

Doc. no. 237. The jury's question maps onto the exact conceptual gap that Appellant's proposed instruction was designed to close: whether non-arresting officials who institutionally lobbied for an investigation "cause" an arrest under § 1983. At the conference to address the response, Appellant again requested her "set in motion" language. The court declined and answered that Appellant was "not required to prove that the defendant's actions . . . were themselves illegal." Doc. no. 239. That response told the jury what causation does not require; it did not tell the jury what causation does require where the defendant's role was institutional rather than personal. The jury returned a defense verdict shortly after.

The district court found the objection unpreserved under *Gray v. Genlyte Group, Inc.*, 289 F.3d 128, 134 (1st Cir. 2002), Doc. no. 259 at 17-18, but acknowledged in the same footnote that the *Gray* rule "has come under criticism in recent years." *Id.* at 18 n.16. That acknowledgment is itself evidence that the question is substantial: a circuit court does not summarily affirm on a preservation rule that the trial court itself identifies as judicially questioned. And even on its own terms, the preservation issue is genuinely contested. Appellant's mid-deliberations request for the *Sanchez* language—which she made the moment the jury's confusion

5

crystallized—was the functional equivalent of a Rule 51 objection in the unique posture of a mid-deliberations curative request.

Even if *Gray* preservation is found wanting, plain-error review is available under Federal Rule of Civil Procedure 51(d)(2) for "a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." The jury's actual mid-deliberations confusion is direct evidence that the omitted *Sanchez* language "affect[ed] substantial rights" under prong three. *See Hartman v. Moore*, 547 U.S. 250, 259 (2006) (a § 1983 plaintiff in a retaliation case "must show a causal connection between a defendant's retaliatory animus and subsequent injury"). Whether plain-error review applies and whether it requires a new trial on this record are substantial questions that cannot fairly be resolved on a motion for summary disposition.

### B.    The Admission of Post-Arrest Inflammatory Speech Presents a Substantial Question

The district court admitted evidence that, six months after her January 2021 arrest—and approximately one month after her guilty plea—Appellant used a sexually charged vulgar epithet to describe Attorney Leonard's January 2021 conduct in public testimony before the Board of Assessors. Doc. no. 259 at 25-26. The court admitted this evidence on the theory that it rebutted Appellant's emotional-distress damages. *Id.*

6

Two features of the record make this a substantial Rule 403 question. First, the court's own footnote 18 acknowledges that it "would have entertained a limiting instruction regarding this evidence," *id.* at 26 n.18—a tacit recognition that the evidence carried unfair-prejudice risk requiring mitigation. The combination of the court's acknowledgment and the absence of any limiting instruction is itself a Rule 403 issue this Court should examine on full briefing. *See Old Chief v. United States*, 519 U.S. 172, 180-81 (1997) (Rule 403 requires balancing of probative value against danger of unfair prejudice).

Second, the inferential chain on which the court relied is logically weak. Anger expressed in public testimony six months after a traumatic government action is fully consistent with continuing distress; it does not refute it. The court treated continued public speech as evidence that the arrest did not cause emotional distress, but that inference assumes a litigant who has been retaliated against will respond with silence rather than defiance. Worse, in a First Amendment retaliation case, that inference is in tension with the very right at issue. The plaintiff's capacity to keep speaking is precisely what the First Amendment protects; using the persistence of that speech to deny her damages permits the jury to penalize her for exercising the right she sued to vindicate. *See Lozman v. City of Riviera Beach*, 585 U.S. 87, 101 (2018) (where the plaintiff's speech consists of public criticism of municipal

officials and litigation against the City, that speech is "high in the hierarchy of First Amendment values").

These issues do not lend themselves to summary affirmance. They require full briefing on the Rule 403 calculus, the First Amendment overlay in a retaliation case, and the cumulative effect of the absence of a limiting instruction the court itself signaled it would have given.

### C. The Exclusion of the July 2022 Incident Presents a Substantial Question, Particularly Given the Asymmetric Admission of Appellant's Own Post-Arrest Conduct

The district court excluded evidence of a July 22, 2022 encounter between Attorney Bolton and Appellant in a public hallway at City Hall—an encounter in which Appellant alleges Attorney Bolton yelled at her, threatened her with arrest, and resulted in responding officers questioning his position that the public hallway was not a place she was entitled to be. Doc. no. 259 at 23-24. The court excluded the evidence under Rule 403, citing trial-within-a-trial risk, jury confusion as to time period, and limited relevance to Attorney Bolton's intent in January 2021. *Id.* at 24-25.

The exclusion presents two substantial questions. First, this Court has recognized that "evidence of subsequent events frequently sheds light upon, and thus assumes relevance in relation to, antecedent acts." *Iacobucci v. Boulter*, 193 F.3d 14, 20 (1st Cir. 1999); *see also United States v. Sutton*, 970 F.2d 1001, 1007 (1st Cir.

1992). Continuing retaliatory animus toward the same plaintiff, by the same defendant, in the same institutional context, is the paradigm of subsequent conduct that bears on antecedent intent. Retaliatory animus is the central inquiry in a § 1983 First Amendment retaliation claim. *Hartman*, 547 U.S. at 259.

Second, and more important, the exclusion produced a stark evidentiary asymmetry. The district court admitted post-arrest evidence of Appellant's continuing speech to impeach her emotional-distress claim, but excluded post-arrest evidence of Attorney Bolton's continuing conduct to prove his intent at the time of the alleged retaliation. The jury thus heard the worst of what Appellant said after the arrest but none of what Attorney Bolton did. *See Iacobucci*, 193 F.3d at 20 (relevance is a "fluid concept" and a "low barrier" to admissibility); Fed. R. Evid. 403 (Rule 403 permits exclusion only where probative value is "substantially outweighed").

Both the principal ruling and the asymmetry it produced require briefing. They are not the stuff of summary disposition.

### D.     The Rule 59 Order Credited the Drega Testimony as "Powerful" Without Addressing Documented Record Contradictions, Presenting a Substantial Abuse-of-Discretion Question

On a Rule 59 motion challenging the weight of the evidence, the trial court "is free to independently weigh the evidence" rather than apply the deferential JMOL inquiry whether a reasonable jury could have reached the verdict. *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). The Rule 59 order in this case credited Attorney

9

Bolton's trial-time recounting of the 1997 Carl Drega Colebrook shooting as "powerful testimony" supporting the jury's rejection of retaliatory animus. Doc. no. 259 at 15-16. The order, however, does not address documented and unaddressed contradictions in the same trial record.

In a contemporaneous Union Leader article published the day after the January 22, 2021 incident—and sixteen days after the January 6, 2021 Capitol breach—the same reporter who interviewed Attorney Bolton attributed to him the characterization of Appellant's entry into the Legal Department as an "out-and-out invasion" that was "intended to disrupt government operations seemingly inspired by the events in Washington." Pl. Ex. 51. On cross-examination, Attorney Bolton testified he was "virtually certain" he never made the January 6 statement, acknowledged he read the article after publication, and admitted he never contacted the reporter to seek a correction. In the same line of cross-examination, asked what he meant by his admitted statement that "happily, no one was injured or worse," Attorney Bolton volunteered the Drega story. The Rule 59 order quotes that volunteered Drega testimony in extenso. Doc. no. 259 at 15-16. It does not mention the January 6 attribution, the unrebutted reporter's attribution, the failure to correct, or the absence of any redirect explanation for why a journalist would invent that particular framing.

The January 6 attribution and the Drega testimony describe categorically different threat frameworks. January 6 was a politically motivated assault on a democratic process, undertaken by people seeking to disrupt government operations. The Drega narrative was a property-tax-aggrieved private citizen turning violent. A defendant motivated by Drega-style fears—concern about a disgruntled tax-abatement complainant—would have invoked Drega to the reporter. Instead, Attorney Bolton invoked the political framing of January 6, which characterizes Appellant not as a personal-violence risk but as a First Amendment actor seeking to disrupt government.

Separately, Attorney Leonard's contemporaneous written statement—prepared the day of the January 2021 incident—invoked her concern about "recent violent actions against government employees" as a basis for wanting Appellant removed. On cross-examination, Attorney Leonard was unable to identify any specific violent actions she had in mind, and conceded she did not communicate any such concern to the responding officer. Sixteen days after January 6, in the context of a politically active critic of city government, the reference is not opaque. The Rule 59 order does not address this evidence either.

This appellate ground does not ask this Court to decide credibility. It asks this Court to determine whether a Rule 59 analysis that affirmatively credits a witness's

11

testimony as 'powerful' may do so without engaging with the documented contradictions in the same trial record. That is a substantial question.

### E.    The Weight-of-the-Evidence Question Cannot Be Resolved Without the Full Record.

The Rule 59 weight-of-the-evidence analysis reviewed a record that, on key points, runs in Appellant's favor and was not engaged in the Order. Officer Roach—the investigating officer—testified at trial that probable cause existed in the field on January 22, 2021, to obtain an arrest warrant, and that *but for* Attorney Leonard's subsequent contact with the Police Department, the matter would have remained closed. That testimony directly supports causation as to Attorney Leonard and is consistent with the jury's confusion about the legal threshold for institutional "causation." The Rule 59 order treats Attorney Leonard's denial as a reasonable basis for the jury's contrary finding without grappling with the police testimony that is the predicate for the causation theory. Doc. no. 259 at 14.

Appellant does not contend that the weight-of-the-evidence challenge is independently dispositive on appeal. *See Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 171 (1st Cir. 2005). But the sufficiency analysis is intertwined with the instructional and Rule 59 issues: a verdict that may rest on a misunderstanding of "causation" cannot be tested for weight without first resolving what concept the jury was applying. The interaction of these issues makes the present record an inappropriate vehicle for summary disposition.

12

**F.      The Issues Together Present a Compelling Cumulative-Error Argument**

This Court has long recognized that individually harmless errors may combine to require a new trial. *Gilday v. Callahan*, 59 F.3d 257, 267 (1st Cir. 1995). The combined effect of the record here—(i) jury confusion on the central element of the claim; (ii) a curative instruction that did not address the substance of the confusion; (iii) admission of inflammatory post-arrest plaintiff speech without a limiting instruction the court signaled it would have entertained; (iv) exclusion of corresponding post-arrest defendant conduct in a Rule 403 ruling that produced asymmetric treatment of the same category of evidence; (v) a general verdict form that prevents post-trial identification of which element failed; and (vi) a Rule 59 order that credits one defendant's "powerful" safety narrative without engaging the contemporaneous record evidence cutting against it—together present a substantial cumulative-error question. That question is the type this Court routinely resolves on full briefing.

**G.      Appellees' Own Reservation of an Alternative Ground for Affirmance Confirms That the Appeal Presents Substantial Questions**

Footnote 1 of Appellees' own Motion expressly reserves an additional ground for affirmance: that Appellant's subsequently-annulled guilty plea to criminal trespass bars her retaliatory-arrest claim. Mot. at 5 n.1. Whether the doctrine of *Nieves v. Bartlett*, 587 U.S. 391 (2019), and its objective-evidence exception, *id.* at

406-07, apply to a non-arresting government official accused of inducing an arrest is itself unsettled. The Supreme Court's recent decision in *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (per curiam), clarified the *Nieves* exception by holding that, while "slim," it does not require "virtually identical and identifiable comparators"— a clarification the First Circuit has not yet had occasion to apply in this context. The factual record—a Corporation Counsel and Deputy Corporation Counsel alleged to have used their institutional position to pressure police to reopen a closed file and prosecute a known critic—presents the kind of legal question that requires briefing.

Appellees cannot simultaneously contend that the appeal presents "no substantial question" and reserve a distinct legal ground for affirmance that itself implicates a developing area of Supreme Court jurisprudence. The reservation is a concession.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should DENY Appellees' Motion for Summary Disposition and direct the parties to proceed with full briefing on the merits.

**Dated: July 1, 2026**                Respectfully Submitted,

Plaintiff Laurie Ortolano.
By her Attorneys,

14

/s/ Samson Racioppi
Samson Racioppi, Esq.
Racioppi Law Office
10 Royal Oak Drive
Nashua, NH 03064
(603) 713=8587
samson@racioppilaw.com
*Pending admission to First Circuit*

*/s/ William Aivalikles*
William Aivalikles, Esq.
First Circuit Bar #19697
Law Office of William Aivalikles
253 Main Street
Nashua, NH 03060
(603)880-0303
william@nhtriallaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this filing was served via electronic filing / PACER upon counsel of record.

**Dated: July 1, 2026**          */s/William Aivalikles*
                          William Aivalikles, Esq